# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**STANDARD QUIMICA DE VENEZUELA, et al.,**
**Plaintiffs,**

**v.**                                          **Case Number: 96-2548 (DRD)**

**CENTRAL HISPANO INTERNATIONAL, INC., et al.,**
**Defendants.**

RECEIVED AND FILED
2003 JAN -9 AM 10: 50
CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN. PR.

## OPINION & ORDER

Pending before the Court turns is Defendants' Motion for Summary Judgment (Docket # 255). The Plaintiffs' Opposition is found at Docket # 268. Defendants replied through Docket # 288. After analyzing the submissions, Defendants' Motion is **GRANTED in Part** and **DENIED in Part**.

## THE CASE

The Court must analyze the factual scenario in this case construing the facts and record in the light most favorable to the party opposing summary judgment. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000)("...the Court must draw all reasonable inferences in favor of the nonmoving party..."); see also, Leahy v. Raytheon Company, ___ F.3d ___, 2002 WL 31819562, *3 (December 17, 2002) ("...the court must take the record 'in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor'.") (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990); see also, Plumley v. Southern Container Inc., 303 F.3d 364, 368-69 (1st Cir. 2002)).

The Plaintiffs in this case include Mr. Germán L. Prieto, wife, and various corporate entities

344 𝒏𝒇

controlled and / or owned (in whole or in part) by him. Defendants include two banks chartered under the laws of the Commonwealth of Puerto Rico: Central Hispano International and Banco Central Hispano- Puerto Rico (collectively referred to as the Puerto Rico banks). According to the Plaintiffs Mr. Prieto is a "person of means", with personal reported assets in excess of $28 million dollars (for the time period of 1993 to 1995). Prieto is educated (electrochemical university degree), and he owns multiple corporations and businesses in multiple countries employing more than one thousand persons. Among these companies are Co-Plaintiffs SVESSA, Standard Quimica, 38 Serrano and Inverplata; not only does Prieto own or co-own each, he is also directly involved in their management.

In late 1992 Co-Plaintiff Inverplata (one of the companies owned by Prieto) was completing the construction of the Quinto Centenario Hotel in the Dominican Republic, and needed further financing to complete said construction. Inverplata at the time had a multi-million dollar loan with a Dominican bank with an interest rate in excess of 20%. Inverplata ultimately requested a loan from the Puerto Rico banks for $20 million under much more favorable interest rates: $6 million would be used to complete construction of the hotel and cancel the debts with the Dominican banks, and $14 million to purchase a certain property in Spain.[1]

On December 30, 1992, Co-Plaintiff Standard Quimica (another company owned by Prieto) acquired financing for the purchase / sale of a building known as Lopez de Hoyos 143. The financing was through Sociedad Hispano Inmobiliaria de Gestión, S.A. (a non-party in this action), an affiliate owned by non-party Banco Central Hispanoamericano, S.A. (the Spanish parent bank of

---

[1]On February 10, 1993, a mortgage agreement was executed between the Puerto Rico banks and Inverplata, for those purposes.

the Puerto Rico banks).  This (sale/purchase agreement) contract was ultimately signed in January

of 1993 in Madrid, Spain, (hereafter the "1992 Agreement"). That agreement contained the terms

and conditions by which Standard Quimica would acquire the property from Sociedad Hispano

Inmobiliaria de Gestión. **The Puerto Rico banks were not parties to this agreement**.  Subsequent

to signing said agreement, Standard Quimica was adamant about renegotiating certain portions of

the agreement under more favorable terms, including switching responsibility for payment of certain

taxes (from Standard Quimica to the bank).  These modifications were finalized through an Addenda

to the agreement, signed in late February of 1993.

Two days later SVESSA, a corporation created by Prieto / Standard Quimica to purchase

Lopez de Hoyos 143, executed the deed for the purchase and sale of the property with Puentenueva,

S.A., the property owners at the time (hereafter the "1993 Deed").[2]  On that same date Sociedad

Hispano Inmobiliaria de Gestión  delivered the licenses of demolition and new works for the

property.  The "license of works and / or activities" expressly authorized the "construction of a

building exclusively for new plant, for tourist apartments...." None of Prieto's companies appraised

the property, nor did they conduct any viability studies (whether for use as a senior citizens home-

Prieto's actual intention, or otherwise) prior to purchasing the building. Plaintiffs proffered that bank

officials made representations that the property could be used for senior citizens home.

On February 10, 1993, Standard Quimica and Inverplata executed a commitment letter for

the Puerto Rico banks to provide the $20 million loan noted above: $4 million to refinance the debt

with the Dominican banks, $14 million for investment in "an apart-hotel at Lopez de Hoyos 143,

---

[2]On September 28, 1992, Sociedad Hispano Inmobiliaria de Gestion, S.A., (HIG),
executed a contract with Puentenueva, S.A., whereby HIG assumed the negotiation of the sale of
the Lopez de Hoyos 143 project.

Madrid, Spain," and $2 million to finish hotel and casino construction at Quinto Centenario (hereafter the "1993 Agreement"; loan/financing agreement for which part of the monies disbursed were going to be destined to acquire the Lopez de Hoyos property)[3]. This apparently even though they already had original financing for Lopez de Hoyos 143 from Sociedad Hispano Inmobiliaria de Gestión, S.A.  $15 million of the loan came from Banco Central Hispano- Puerto Rico; the remaining $5 million was provided by Central Hispano International.  For reasons not clear from the record, though all disbursements of the $20 million were made in 1993, the loan agreement was actually signed in July of 1995.

A center issue of all the claims to this case involves the obtaining of proper permits for the construction / remodeling of the property at Lopez de Hoyos 143.  Prieto apparently intended to build an assisted living facility for senior citizens, and proffered that the Puerto Rico banks made numerous false and misleading allegations about his ability to operate such an institution through Lopez de Hoyos 143.  In fact the parties were not able to obtain the necessary permits because that particular property was legally designated exclusively as "tourist" type apartments, not permanent residential living facilities for the elderly.  The problems in not receiving the proper permits forced Prieto to repeatedly push back construction of the property, and in 1994 Prieto, unable to sell the individual apartments at the property, requested the Puerto Rico banks for extensions to repay the loan.

Going back to late 1993, Prieto was interested in another building in Spain at #38 Serrano in Madrid.  This property is located in one of Madrid's most prestigious commercial streets, and was then owned and being occupied by Banco Central Hispanoamericano, S.A. (the Spanish parent bank

---

[3]Evidently, the Puerto Rico banks were parties to this specific loan agreement.

4

of the Puerto Rico banks). Through a letter on December 15, 1993, after an exchange of offers and counter-offers, Prieto accepted the latest offer price for the building, with an option agreement for the purchase being executed on December 20, 1993, (hereafter the "option agreement for 38 Serrano"). **The Puerto Rico banks were not parties to the option agreement between Prieto and Banco Central Hispanoamericano**. For the necessary financing, Prieto turned once again to Central Hispano International in Puerto Rico. On January 14, 1994, Prieto (through another company he created for this purpose- "38 Serrano, S.A.") and Central Hispano International in Puerto Rico executed a loan agreement in excess of $24 million to finance the purchase of the building at 38 Serrano (hereafter the "1994 Agreement")[4]. Banco Central Hispanoamericano remained as a tenant for one additional year. The deed of sale for 38 Serrano was executed on January 19, 1994. Prieto did not appraise the property before purchasing it, and Prieto admits he made the purchase without an alleged knowledge of the prices for comparable properties in the area (although in his original acceptance letter of December 15, 1993, Prieto wrote "notwithstanding that the price I believe is a bit high, I accept the sale....").

In April or May of 1995, Prieto stopped making payments on both of the loans (the 1993 Agreement for $20 million and the 1994 Agreement for in excess of $24 million dollars). In December of 1995 Prieto wrote to the Puerto Rico banks requesting a one year extension on the loan payments. Prieto had estimated his total debt to the Puerto Rico banks in December of 1995 as exceeding $23 million. In early 1996, unable to make any payments on the existing loans, and in need of additional capital, Prieto and Central Hispano International executed a new loan agreement, this time for $30 million (hereafter the "1996 Agreement"). The 1996 Agreement, executed on

---

[4]Evidently, the Puerto Rico banks were parties to this specific agreement.

January 30, 1996, in Puerto Rico, was between Central Hispano International as lender, and Standard Quimica, Inverplata, SVESSA, 38 Serrano and Prieto as borrowers - guarantors. The 1996 Agreement was to cancel all prior loan commitments with respect to Inverplata, Standard Quimica and Lopez de Hoyos 143, pay interest and principal on the 38 Serrano loan up to certain specified amounts (the 1996 Agreement did not extinguish the 1994 Agreement related to 38 Serrano), finance certain publicity and additional construction expenses, and establish a reserve account.[5] The 1996 Agreement provided for delayed payments to actually start 18 months later- July 31, 1998.

No payments have been made on the 1996 Agreement, nor have any payments been made on the 1994 Agreement since April / May of 1995. Plaintiffs filed this action on December 10, 1996. During 1998 Banco Central Hispanoamericano, S.A., foreclosed the mortgages on the properties at 38 Serrano and Lopez de Hoyos 143; the Quinto Centenario Hotel has not been foreclosed and remains operating. Plaintiffs filed a Second Amended Complaint on April 30, 2002.

Plaintiffs alleged causes of action are summarized as follows: 1) Breach of Fiduciary Duties in the handling of the negotiation, execution and enforcement of the Puerto Rico Agreement ("1996 Agreement"); 2) Misrepresentation in connection with the transactions Defendants proposed to Plaintiffs, (the "1993 and 1994 agreements"), which eventually led to more misrepresentations concerning the 1996 Puerto Rico Agreement; 3) Fraud and Deceit inducing contracts to be entered; 4) Duress and Undue Influence in the Execution of the Puerto Rico Agreement; 5) Breach of the Puerto Rico Agreement ("1996 Agreement"); 6) Breach of Implied Duty of Goof Faith in

---

[5]By that time, Plaintiffs owed BCH-PR, the sum of $14, 680,000; "38 Serrano" owed CHI $26,803,803 as to the "38 Serrano Loan"; SVESSA owed Central Hispano Hipotecario, S.A., the sum of 1,963,274,517 pesetas. The 1996 Agreement was constituted to restructure the mentioned financing debts.

Contractual Dealings; 7) Improper Assignment of the Puerto Rico Agreement; 8) Civil Conspiracy;

9) For an Accounting and to Recover Deposits, and; 10) Negligent Infliction of Emotional Distress

and Moral Damages.


## SUMMARY JUDGMENT STANDARD

The standard for summary judgment has been revisited by the First Circuit Court of Appeals

on several occasions. Serapion v. Martinez, 119 F.3d 982, 986 (1st Cir. 1997) (citing McCarthy v.

Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995), collecting cases). A court may grant

summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." FED. R .CIV. P. 56(c).

To determine whether these criteria have been met, a court must pierce the boilerplate of the

pleadings and carefully review the parties' submissions to ascertain whether they reveal a trialworthy

issue as to any material fact. Perez v. Volvo Car Corporation, 247 F.3d 303, 310 (1st Cir. 2001);

Grant's Dairy-Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232 F.3d 8, 14 (1st

Cir. 2000); Cortes-Irizarry v. Corporacion Insular, 111 F.3d 184, 187 (1st Cir. 1997). In applying

this screen, the court must construe the record and all reasonable inferences from it in favor of the

nonmovant (i.e., the party opposing the summary judgment motion, in this particular case,

Plaintiffs). Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. at 150-151; Suarez v. Pueblo

Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000); Plumley v. Southern Container Inc., supra; Leahy v.

Raytheon Company, supra, at *3. An absence of evidence on a critical issue weighs against the

party--be it the movant or the nonmovant--who would bear the burden of proof on that issue at trial.

*Perez, supra; see also,* Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35-36 (1ˢᵗ Cir. 1998); Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1ˢᵗ Cir. 1990).

A fact is deemed "material" if the same "potentially affect[s] the suit's determination." *Id.* "An issue concerning such a fact is 'genuine' if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Cortes-Irizarry, *supra.*

Defendant, of course, must not only show that there is "no genuine issue of material facts," but also, that he is "entitled to judgment as a matter of law." Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1ˢᵗ Cir. 1997). Further, the court is required to examine the record "drawing all reasonable inferences helpful to the party resisting summary judgment," Cortes-Irizarry, *supra,* at 187. There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood...." Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.2d 932, 936 (1ˢᵗ Cir. 1987); Reeves, *supra.* Issues of motive and intent are particularly within the realm of a jury's responsibility, and hence disfavoring the granting of summary judgment. *See:* Poller v. Columbia Broadcasting System, 368 U.S. 464, 473; 32 S.Ct. 436, 449 (1982); Pulman Standard v. Swent, 456 U.S. 273, 287, 102 S.Ct. 1781, 1789 (1982).

Both the Supreme Court and the First Circuit have provided clear and concise precedent regarding summary judgment and those issues which serve to preclude such a finding in the District Court. Among these preclusive issues are motive, intent, credibility, and any weighing of evidence to rule upon the pending motion for summary judgment. As a result, the Supreme Court and the First Circuit have limited the extent to which the District Court may consider certain evidence at summary

judgment.

The Supreme Court announced in <u>Poller v. C.B.S.</u>:

> **[S]ummary procedures should be used sparingly in complex antitrust litigation <u>where motive and intent play leading roles</u>, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice.'**

<u>Poller v. C.B.S.</u>, 368 U.S. at 473, 82 S.Ct. at 491 (*emphasis added*).[6] *See also* <u>Pullman-Standard v. Swint</u>, 456 U.S. at 288-90, 102 S.Ct. at 1790-91 (1982) (discriminatory intent is a factual matter for the trier of fact); <u>United States v. Yellow Cab Co.</u>, 338 U.S. 338, 341, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949) ("[f]indings as to the design, motive and intent with which men act" are factual issues for the trier of fact).

The Supreme Court has been equally clear regarding the court's role in weighing evidence at summary judgment level. The Supreme Court ruled, "**[I]t is clear enough from our recent cases that <u>at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter</u> but to determine whether there is a genuine issue at trial.**" <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986) (*emphasis added*).

The First Circuit has utilized and built on this by stating:

> **[T]he nonmoving party is entitled 'to have the credibility of his**

---

[6]*Poller* once stood for the preclusion of summary judgment on all antitrust cases. This is no longer the case. *See Texaco Puerto Rico v. Medina*, 834 F.2d 242, 247 (1ˢᵗ Cir. 1987) ("Although *Poller* has not been overruled, the courts, including the Supreme Court, now more freely approve the granting of summary judgment in antitrust cases.") The significance of *Poller* is best appreciated for its preclusion effect regarding motive and intent, not for its antitrust history.

> evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in [the evidence] resolved favorably to him...' The precincts patrolled by Rule 56 admit of <u>no room for credibility determinations, no room for the measured weighing of conflicting evidence</u> such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the carapace of the cold record.

Greenburg v. Puerto Rico Maritime Shipping, 835 F.2d at 936 (1ˢᵗ Cir. 1987) (*emphasis added*)

*quoting* Charbonnages de France v. Smith, 597 F.2d 406, 414 (4ᵗʰ Cir. 1979).

More succinctly, the First Circuit reiterated, "**<u>The court, however, must 'not consider the credibility of the witnesses, resolve the conflicts in testimony, or evaluate the weight of the evidence.'</u>**" Brennan v. GTE Gov. Systems, Corp., 150 F.3d 21, 26 (1ˢᵗ Cir. 1998) (*emphasis added*) *quoting* Andrade v. Jamestown Housing Authority, 82 F.3d 1179, 1186 (1ˢᵗ Cir. 1996) *see also* Wagenmann v. Adams, 829 F.2d 196, 200 (1ˢᵗ Cir. 1987) ("**We may not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence. Rather we must examine the evidence and the inferences reasonably to be drawn therefrom in the light most favorable to the nonmovant.**") (*emphasis added*). Even more simply put, "**<u>No credibility assessment may be resolved in favor of the party seeking summary judgment.</u>**" Woodman v. Haemonetics, Corp., 51 F.3d 1087, 1091 (1ˢᵗ Cir. 1995) (*emphasis added*).

"[E]ven in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1ˢᵗ Cir. 1996). Furthermore, "credibility determinations, the weight of the evidence, and the drawing of legitimate inferences form the facts are jury functions, not those of the judge." Reeves, 530 U.S. at 151; 120 S.Ct. at 2110, *quoting* Anderson v. Liberty Lobby, 477 U.S. at 255.

The facts must be examined under the above criteria because on a potential appeal the appellate court examines "the undisputed facts in the light most congenial to the appellants and adopts their version of any contested facts which are material to our consideration of the issues." Vega-Rodriguez, *supra*, at 178.

## DEFENDANTS' CLAIMS FOR SUMMARY JUDGMENT

Under the standard set forth alone, the Court turns in *seriatim* fashion to Defendants' fifteen items considered worthy of summary judgment disposition.

1.    **All of plaintiffs' claims in the First, Second, Third, Fourth, Sixth, Eighth and Tenth Claims in the Amended Complaint sound in tort and are governed by the applicable one-year statute of limitations for tort actions in Puerto Rico.**

Defendants argue that Plaintiffs assert claims of breach of fiduciary duties (First Claim), misrepresentations (Second Claim), fraud and deceit (Third Claim), duress and undue influence (Fourth Claim), breach of implied duty of good faith and fair dealings (Sixth Claim), civil conspiracy (Eighth Claim), negligent infliction of emotional distress (Tenth Claim), and the alleged economic and moral damages resulting from each of those claims. Defendants further aver none of those claims is alleged to involve the violation of a contract between the parties in this action, since the Puerto Rico banks were allegedly not part of the Lopez de Hoyos agreement ("1992 sale/purchase Agreement" between Standard Quimica and HIG), and were not parties to the agreement between Serrano 38 and BCH-SA, as to the "38 Serrano" property, ("option agreement for the 38 Serrano property"). Defendants contend the gravamen of the claims sounding in tort is that the Puerto Rico banks allegedly committed acts or omissions in the sale of certain properties in Spain during 1993 and 1994, specifically that the properties were overvalued and that the necessary permits or licenses

11

were lacking or impossible to obtain, all of which precede execution of the 1996 Loan Agreement (Statement of Undisputed Material Facts, "SUF" at Part IV, E 22,23).[7] It is Defendants' position that tort claims based on *dolo*, etc., are governed by the one-year statue of limitations (extracontractual claim), and hence, that Plantiffs' claims regarding the sale/purchase agreements of both properties, were time-barred. That, because contractual obligations are owed only to the specific individuals named in the contract, and the Puerto Rico banks were not parties to said purchase agreements.

However, and notwithstanding the above, the Court must consider that Plaintiffs, on the other hand, allege that the "1993 Agreement" and "1994 Agreement"[8], loan and financing agreements to which the Puerto Rico banks were part of, were entered into fraud and deceit (because if it was not for the alleged viability of the properties, they would have never requested financing), and that such contracts were consequently, all part of a scheme of deceit, fraud, misrepresentations and bad faith dealings. Plaintiffs also contend that they did not know until after the "1996 Agreement" was executed that there were material misrepresentations, bad faith negotiations, intimidation, *dolo*, etc., in those contracts. Thus, it is not until the year 1996 that Plaintiffs became aware of the damages suffered and that Defendants were liable for them. And hence, that the "1996 Agreement" was also entered through fraud and deceit, as it was executed to cancel all prior loan commitments between Plaintiffs and the Puerto Rico banks.

As this case is before the Court based on diversity jurisdiction, the substantive laws of Puerto

---

[7]It is the Court's opinion that the contracts to which the Puerto Rico banks were part of were the "1993 Agreement" and "1994 Agreement", both loan/financing agreements to obtain money from the Puerto Rico banks to acquire both properties, Lopez de Hoyos and 38 Serrano, respectively.

[8]For the Court's understanding of these contracts, and which parties were really part of them, see Section 8, *infra*.

12

Rico are applicable. Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

The issue of prescription is substantive not procedural. Rodríguez Narváez v. Nazario, 895 F.2d 38,

43 (1st Cir. 1990). Actions brought under Art. 1802 of the Civil Code, 31 P.R. Laws Ann. § 5141

(1991), are governed by a one-year statute of limitations for damages resulting from negligent acts

or omissions. See Art. 1868 of the Civil Code, 31 P.R. Laws Ann. § 5298.

Defendants also argue damages claims based on dolo, deceit, fraud, misrepresentations,

intimidation, or any of the other acts or omissions alleged by plaintiffs that vitiate their consent in

the formation of the 1996 Loan Agreement , are claims in tort, because "*[d]olo* has the characteristic

of being anterior to the act that it vitiates." Fournier v. Eastern Airlines, Inc., 655 F. Supp. 1037,

1039 (D.Puerto Rico 1987) (Fusté, J.) *quoting:* Guaroa Velázquez, Las Obligaciones Según el

Derecho Puertorriqueño, Equity, 1964.

"[D]eceit has an exceedingly broad range and includes 'deception, fraud, false representation

and undue influence." Cruz v. Water Resources Authority, 76 P.R.Dec. 291, 298 (1954).

> The essence of this type of deceit is found in the fraud which obtains the consent of
> the deceived person, wringing it from him or at least influencing him. This is the
> meaning of the words "or insidious machinations" to which the statute refers and
> which encompasses false promises, the exaggeration of hopes or benefits,
> embezzlement, misrepresentation of name, capacity or power, a thousand ways, in
> short, of deceit that may induce a contracting party, producing a vitiated consent. *Id.*,
> at 298-299, *quoting* Manresa, Comentarios al Código Civil Español, vol. 8 (2d ed.
> 1907), at p. 657.

Defendants argue that when *dolo* or deceit occurs in the formation of a contract it antedates

the existence of a contract, so that the acts that give rise to it cannot arise under the contract, which

does not exist at the time of the commission of the *dolo* or deceit. In consequence, an action for

damages because of *dolo* or deceit in contrahendo can only be an action in tort. As recognized in

13

Dopp v. Pritzker, 831 F. Supp. 939, 942 (D.Puerto Rico 1993) (Pieras, J.), a cause of action for *dolo*

in the formation of a contract "lies right between a tort and a criminal fraud." *See:* Sugarman v.

Statler Industries, Inc., 797 F. 2d 3 (1st Cir. 1986) (Mass. law; breach of fiduciary duty is a tort

claim).

Plaintiffs, however, point to caselaw supporting determinations of *dolo* or deceipt being

findings of fact. *See:* Serrano Ramirez v. Clinica Perea, 108 P.R.Dec. 477 (1979); Carrasquillo v.

Lippitt & Simonpietri, Inc., 98 P.R.Dec. 659 (1970).

The Court understands that claims of dolo, deceit, fraud, misrepresentation, intimidation and

presumption thereunder are to be left to the jury. Tew v. Chase Manhattan Bank, N.A., 728 F.Supp.

1551, 1555 (S.D.Fla. 1990) ("certain issues such as fraud, intent, and knowledge lend themselves

to trial rather than summary judgment"). Issues of motive and intent are, of course, strictly left to

the jury. Poller, *supra;* Pullman, *supra; see also* Mulero Rodriguez v. Ponte, Inc., 98 F.3d 670, 677

(1st Cir. 1996) (reversing summary judgment and stating, "determinations of motive and intent,...,

are questions better suited for the jury".)

Additionally, and most critically, should the jury find the existence of *dolo* capable of

annulling the contracts, referring to the loan financing agreements of the properties, (which as just

stated must be determined by the jury), then Art. 1253 of the Civil Code, 31 P.R.Laws. Ann. § 3512,

specifically provides for a four (4) year statute of limitations.[9] Although no damages are to be

---

[9]Consequently, in cases where *dolo* is to be found, the contract is annulled, and Article
1255 of the Civil Code states "[w]hen the nullity of an obligation has been declared, the
contracting parties shall restore to each other the things which have been the object of the
contract with their fruits, and the value with its interest, without prejudice to the provisions
contained in the following sections." P.R. Laws Ann. tit 31 § 3514. Moreover, "[w]henever a
person, who is obliged by a declaration of nullity to return a thing, cannot return it because it has
been lost, he must return the fruits collected and the value which the thing had when lost, with

recuperated, in case the (loan) contracts are annulled, Article 1255 provides for the mutual restitution between contracting parties, of the things ("object") exchanged under the contract, plus interests if applicable. Thus, if there is a jury finding of *dolo,* then the case is not time barred, because Plaintiffs have four years to request the restitution stated above.

As to the issue of the statute of limitations, Defendants motion for summary judgment is **DENIED**.   At trial, should Defendants believe the matters of *dolo* or deceit, as to the loan agreements,  have not been proven / established,  Defendants are free to re-argue the point at that time under Rule 50 standard (see discussion, *infra,* at Conclusion).


**2.    Continuously, since at least the February-October 1993 period or even earlier, Grupo Prieto knew or reasonably should have known of both the basis of the claims of fraud, deceit, misrepresentation, intimidation and related torts, and the alleged authors of the damages arising from the purchase and sale of LDH 143.**

The term for a statute of limitations generally begins to run when the cause of action could have been instituted.  This is certainly the case for the one-year for tort actions.  *See:* Hodge v. Parke Davis & Co.,_ 833 F.2d 6 (1st Cir. 1987); see, 31 P.R. Laws Ann. § 5298, Article 1868 of the Civil Code, 31 P.R. Laws Ann. § 5299, Article 1869.  An action "could have been instituted" when the plaintiffs are cognizant of both the harm and the "author of the damage."  Colón Prieto v. Geigel, 115 P.R.Dec. 232, 247 (1984); *See also:* Sánchez v. Elec. Power Auth., 142 P.R.Dec. 880, 1997 P.R. Eng. 878520 (1997).  "Once a plaintiff is on notice of the injury, [he / she] may 'not wait his (or her) injury to reach its final degree of development and postpone the running of the period of limitation

---

interest from the same date." P.R. Laws Ann. tit 31 § 3518. (Loss of thing ordered returned). See also Colon v. Promo Motor Imports, Inc., 144 P.R. Dec. 659 (1997); Marquez v. Torres Campos, 111 P.R. Dec. 854 (1982).

according to his (or her) subjective appraisal and judgment.'" Rodríguez-Suris v. Montesinos, 123 F 3d 10, 13 (1st Cir. 1997) (citing: Ortiz v. Municipio de Orocovis, 113 P.R.Dec. 484, 13 P.R. Offic. Trans. 619, 622 (1982)). "Knowledge of the author occurs when plaintiff knew or with the degree of diligence required by law should have known whom to sue." Rosado Serrano v. E.I. Dupont de Nemours & Co., 797 F. Supp. 98, 102 (D. Puerto Rico 1992). See also, Ramos v. Romano, 83 F.Supp. 233 (D. Puerto Rico 2000)(restating prescription doctrines in Puerto Rico, tollings, equitable tolling, commencement dates for the running of the statue of limitations).

Defendants allege that Grupo Prieto knew, during 1993, that Lopez de Hoyos 143 allegedly encountered serious problems with, or lacked, the necessary permits or licenses, and suspected that specific individuals of Sociedad Hispano Inmobiliaria de Gestión, S.A., and the Puerto Rico Banks had deceived them during the sale. In 1994, the alleged injury fully materialized when SVESSA could not sell the apartments in Lopez de Hoyos 143 or operate it as a senior citizen's residence for lack of permits and requested extensions of time for their payment obligations with the Puerto Rico Banks. In April-May 1995, Grupo Prieto unilaterally decided to breach their contractual obligations with the Puerto Rico Banks by withholding payment, all because lack of permits for the construction of the apartments for the aging. Thus, Plaintiffs actually knew of their injury caused by the lack of permits and the persons responsible since 1993 and the statute of limitations began to run at that time. With respect to the claims of deceit, fraud or misrepresentation arising from the allegation that both properties were overvalued, Defendants claim Plaintiffs did not exercise any due diligence to ascertain the value of the properties and failed to do what any reasonable prudent buyer should have done to ascertain the existence of an injury. They continue to argue that had Grupo Prieto made an independent appraisal of the properties (in 1993 and 1994) it would have discovered whether or not

16

the prices it voluntarily accepted to pay were excessive at the time of the purchases. Accordingly, because the claims accrued in 1993 and the complaint was filed in 1996 at least three years after the limitations period had expired, the counts in the Amended Complaint described above must be dismissed with prejudice, because they are strictly sounding in tort.

Defendants' entire argument is based on the premise that there is no *dolo*, and hence no four year term of prescription under 31 P.R. Laws Ann. § 3512. As stated above, *dolo* as well as fraud is a determination based on weighing of the evidence and motive and intent, which is to be made not under summary judgment standards, but by the jury. Mulero-Rodriguez v. Ponte, Inc., 98 F.3d at 677; Tew v. Chase Manhattan Bank, N.A., 728 F.Supp. at 1551. Because this request depends on the weighing of the evidence, (see Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.Supp. at 936; at summary judgment level, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence...") and motive and intent (see Lipsett v. University of Puerto Rico, 864 F.2d 881, 895 (1st Cir. 1988), it is **DENIED** at summary judgment level.[10] See also, Brennan v. GTE Gov't Sys. Corp., 150 F.3d at 30 ("determinations of motive and intent, ...are questions better suited for the jury", as quoted in Dominguez-Cruz v. Suttle Caribe Inc., 202 F.3d 424, 433-434 (1st Cir. 2000); quoting Mulero-Rodriguez v. Ponte, Inc., *supra*; Woodman v. Haemonetics Corp., 51 F.3d at 1092).

### 3.    The one year limitations period for tort claims in the purchase and sale of 38 Serrano accrued on March 15, 1995.

---

[10]Where motive and intent play leading roles, "under such circumstances, jury judgment about credibility are typically thought to be special importance." Lipsett v. University of Puerto Rico, 864 F.2d at 895; quoting Stephaniscen v. Merchants Dispatch Transport Corp., 722 F.2d 922, 928 (1st Cir. 1988).

Defendants' entire argument on this point is as follows:

> Prieto became aware of the alleged lack of permits in 38 Serrano when he signed a contract with Habitat, a non-party unrelated entity (SUF V B 4,5). On March 13, 1995, 38 Serrano signed a contract with Habitat (Id. 5). By then, plaintiffs not only actually knew the alleged deceit in the LDH 143 transaction but knew the identity of both the seller of 38 Serrano and the Puerto Rico banks that financed the sale of that property. Because the statute of limitations on plaintiffs' tort claims arising from the lack of permits in 38 Serrano began to run in 1994, and the action was instituted in late 1996, all tort claims are time barred by the one-year limitations period.

Defendants Memorandum of law in support of their Motion for Summary Judgment, Docket # 255, p. 10.

Again, this argument presupposes the one-year statute of limitations is applicable, and not a four year term, which is a potential jury finding. Because there is a four year determination that can be made, this argument cannot be considered at summary judgment standard, and is thus **DENIED**.

## 4.    Prieto was not intimidated into signing the 1996 Loan Agreement. Accordingly, the Fourth Claim in the Amended Complaint must be dismissed.

Defendants contend that the 1996 Loan Agreement was executed and negotiated by Prieto, who owns and controls Standard Química, Inverplata, SVESSA, and 38 Serrano (in addition to numerous other corporate entities), the borrowers-guarantors to the 1996 Loan Agreement (together with Prieto himself). They assert Prieto's signature of the 1996 Loan Agreement was not obtained by intimidating or injuring him personally and physically; Prieto is a well-educated man, sophisticated businessman, and multimillionaire, with a net worth of in excess of $28 million who owns and manages various enterprises. Defendants point out he was also advised by his attorney, by a tax adviser, and by officers of his companies during the negotiations of the 1996 Loan Agreement, at least one of whom proposed to Prieto that the 1996 Loan Agreement would be

beneficial to plaintiffs.

Defendants point out that consent given by intimidation is void. Article 1217 of the Civil Code, 31 P.R. Laws. Ann. § 3404. "Intimidation exists when one of the contracting parties is inspired with a reasonable and well-grounded fear of suffering an imminent and serious injury to his person or property, or to the person or property of the spouse, descendants, or ascendants." Article 1219 of the Civil Code, 31 P.R. Laws Ann. § 3406. They additionally point out that the "status of the person must be considered." *Id.* M. Albaladejo, the well-known commentator on the Puerto Rico Civil Code, identified five requirements for establishing intimidation:

A.    A state of apprehension that compels consent.

B.    The apprehension is provoked by the actions of another person.

C.    The apprehension must be rational [or reasonable] and well-grounded.

D.    [The apprehension] refers to an injury that the subject will suffer unless he or she enters into the contract.

E.    The intimidatory actions must be anti-juridical.

*See*: Garita Hotel Ltd. Partnership v. Ponce Federal Bank, 954 F. Supp. 438, 50 (D. Puerto Rico 1996).

Defendants' argument highlights that: (A) the type of intimidation protected by the laws does not encompass "threats" to foreclose on a valid mortgage; (B) Prieto is the type of shrewd multi-millionaire businessman who, because of his business savvy, could hardly be intimidated into any business-type contract; and (C) they have every legal right to foreclose on mortgaged properties for failure to pay a corresponding mortgage according to written contract terms. In reply, Plaintiffs have to search back to the 1930's to find supporting caselaw holding that threats to enforce valid legal claims (such as foreclosing on a mortgage and bringing an action in court for breach) can constitute

intimidation.  Plaintiffs argue they were subjected to economic coercion with regard to the 1996 Agreement since they were not given any reasonable alternatives to deal with the existing loans. Defendants counter, and the Court agrees, that the defendants were not under any necessary duty to provide a list of every possible alternative.  After all, the easiest of these could have been Plaintiffs paying their loans on time.  Additionally, Defendants' banks were not the only banks in Puerto Rico; Plaintiffs could naturally have attempted to obtain the necessary financing from any one (or more) of several local and international banks.  The Court is of the opinion that any party may openly promote their legal right to foreclose on a valid mortgage as well as promote a legal right to resort to the courts for satisfaction of illegal injury to legal rights; this is not generally considered intimidation.

Plaintiffs do bring up one interesting point, however.  They argue that since the original agreements (1992 [Lopez de Hoyos] Loan Agreement and 1994 [Serrano 38] Loan Agreement) were entered into through fraud, deceit and misrepresentations, Defendants had no legally enforceable rights under those contracts to foreclose on the properties.  Therefore, Defendants were not exercising a legal right in threatening to foreclose, hence there was intimidation.  We are once again back to purely factual matters involving issues of weighing of the evidence and of motive and intent. Anderson v. Liberty Lobby, 477 U.S. at 242-243 ("[a]t summary judgment stage, the trial judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is genuine issue for trial"); Brennan v. GTE Gov't Systems Corp., 150 F.3d at 25 ("[t]he court,[at summary judgment]... 'must not consider the credibility of witnesses, resolve the conflicts in testimony, or evaluate the weight of evidence.", quoting Andrade v. Jamestown Housing Authority, 82 F.3d at 1186; Wagenmann v. Adams, 829 F.2d at 200). Whether or not there was fraud

and / or deceit is a question exclusively for the jury, and though the Defendants make strong points here, which may very well eventually persuade the jury, the Court must **DENY** the request at summary judgment standard.

5. **Plaintiffs were not induced to enter into the 1996 Loan Agreements by Fraud or Misrepresentation and the Second and Third Claims in the Amended Complaint must be dismissed.**

Defendants defer to the parol evidence rule to start this argument. Under Civil Code Article 1233 (31 P.R. Laws Ann. § 3471), "[i]f the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed." Rule 69(B) of the Puerto Rico Rules of Evidence (32 P.R. Laws Ann. App. IV R. 69(B)), states that "[w]hen in an oral or written agreement, either public or private, all the terms and conditions constituting the true and final intention of the parties have been included, such agreement shall be deemed as complete, and therefore, there can be between the parties, or successors in interest, no evidence extrinsic to the contents of the same."

These rules "bar the consideration of extrinsic evidence to vary the clear, express, and unambiguous terms of a contract." Borschow Hospital and Medical Supplies, Inc. v. Cesar Castillo Inc., 96 F.3d 10, 15 (1st Cir. 1996). In this context, "an agreement is 'clear' when it can 'be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation." *Id.*, *quoting* Executive Leasing Corp. v. Banco Popular de Puerto Rico, 48 F.3d 66, 69 (1st Cir. 1995). "For Article 1233 purposes, a term is considered 'clear' when it is sufficiently lucid to be understood to have one particular meaning, without room for doubt." Vulcan Tools of Puerto Rico v. Makita USA, Inc., 23 F.3d 564, 567 (1st Cir. 1994), *quoting* Hopgood v. Merrill Lynch, Pierce, Fenner & Smith, 839 F. Supp. 98, 104 (D. Puerto Rico 1993). Even if fraud or

21

illegality is alleged, extrinsic evidence that is offered "to contravene an express term of the agreement" is inadmissible. Executive Leasing, 48 F. 3d at 70 (citation omitted). For example, allegations of *dolo* arising from misrepresentations in the formation of a contract that contradict the clear, express terms of the contract are inadmissible. Fournier v. Eastern Airlines, Inc., 655 F. Supp. 1037 (D. Puerto Rico 1987) (Fuste, J.). Where contract terms are not express and unambiguous, however, "[t]he intention of the parties is the essential test provided in the Civil Code to fix the scope of contractual obligations." Borschow Hospital and Medical Supplies, 96 F.3d at 16, *quoting*: Merle v. West Bend, 97 P.R. Dec. 392, 399 (1969).

The relevant sections of the 1996 Agreement include the following:

Article 7 ["Suspensive Conditions"].1 (iii): That Debtor delivers or causes delivery to the Bank of the following documents or instruments:... (3) Authentic proof, satisfactory to Lender, including through legal opinions of attorneys exercising in the jurisdictions where Borrower and Guarantors were constituted, as follows: that the same have obtained from their governing boards the corresponding authorizations to execute this contract and to assume and comply with the obligations contracted in accordance herewith....

Article 8 ["Representation"] .5: Borrower and Guarantors possess all patents, permits, licenses, grants, and whatever other authorizations may be necessary to carry out their business in the same manner as it is being carried out at present, or as they propose to carry out in the future, without diminution of the rights of third parties, except for the licenses in connection with Lopez de Hoyos and 38 Serrano, which are being processed.

Article 9 ["Commitment to Do"] .2: Maintain, renew and keep current all rights, powers, privileges, licenses, permits and grants which borrower and guarantors presently possess, which are necessary for the proper exploitation of their businesses.

Article 9.3: Comply with all laws or regulations of the Dominican Republic, Venezuela and Spain, as the case may be, applicable to the exploitation of their businesses.

Article 9.4: Maintain at all times all licenses or permits required by law applicable to the exploitation of their businesses.

Article 9.12: Borrower, Prieto and Standard Venezuela shall actively pursue the obtention [*sic*] of the necessary licenses for the exploitation and sale of the hotel-apartments in Lopez de Hoyos and the sale to third parties of said hotel-apartments.

No other clauses within the 1996 Agreement make reference to any responsibilities of the parties concerning obtaining permits and assisting with the sales of properties. The responsibilities of the parties contracted through the 1996 Agreement are clear and unambiguous; extrinsic evidence concerning the 1996 Agreement would violate the parol evidence rule, and is thus to be excluded; Defendants' motion on this point is accordingly **GRANTED**.

Defendants additionally claim under this argument that Plaintiffs cannot claim they were induced to enter into the 1996 Loan Agreement because of the misrepresentation as to López de Hoyos and Serrano 38 because when they signed the 1996 Loan Agreement they already knew the existence of the alleged misrepresentations. Plus, Defendants claim Prieto's personal circumstances belie the claim that he was induced by *dolo* to sign the 1996 Loan Agreement. As to the first point, ascertaining when and what someone might have known of a particular fact is by its very nature a question of fact and not of law. Any and all weighing of the evidence is the jury's determination, and becomes no man's land for the Court to enter on summary judgment standard, to be left exclusively to the jury as a question of "knowledge", Tew v.Chase Manhattan Bank, N.A., 728 F.Supp. at 1555. Likewise, the Court must accept at summary judgment Plaintiffs' contention that Prieto is a simple promoter of educational and vocational institutions (rather than a successful experienced international businessman). Further, ultimately the degree in which his personal circumstances, experience and education come into play in Plaintiffs' claims also involve a request to weigh the evidence. See, Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.2d at 936. Defendants' motion on these points is **DENIED**.

23

Thus, Defendants' argument #5 is **GRANTED in part** and **DENIED in part**.

6.     **No agreement existed between the Puerto Rico banks and plaintiffs to allow the sale of the Hotel V Centenario that could form the basis of any claim.**

According to the Defendants' argument, Plaintiffs allege that they signed the 1996 Loan Agreement because, before the signing of that agreement, the Puerto Rico banks agreed to allow the sale of apartments in the Hotel V Centenario. Second Amended Complaint, ¶ 149. They allege that Prieto reached an oral agreement with the Puerto Rico banks to allow the sale, whose proceeds would then be used to pay plaintiffs' debts with the banks. Id., at ¶ 125. The Puerto Rico banks' consent was allegedly necessary because, to carry out the sale, a deed of horizontal property for the Hotel V Centenario would have to be recorded, and under Dominican Republic law, the Puerto Rico banks, as the property's mortgage holders, had to lend their consent to the recording of the deed. Id.

Defendants continue that as of January 30, 1996, the only contracts in force between plaintiffs and the Puerto Rico banks were the 1996 Loan Agreement and the 38 Serrano Loan. After that date, no other written contracts between Plaintiffs and the Puerto Rico banks existed. Specifically, Defendants contend there is no contract between Plaintiffs and the Puerto Rico banks to authorize the sale of the Hotel V Centenario as hotel apartment units, and the terms of the 1996 Loan Agreement do not include anything about the sale of the Hotel V Centenario as apartment units, nor about the constitution of a deed of horizontal property in the Hotel V Centenario.

Defendants primary point is based again on the parol evidence rule. They assert that neither of the two valid pending agreements (the 1996 Loan Agreement and the 38 Serrano Loan) included any language regarding the sale of apartments at Hotel V Centenario, thus indicating the clear intention of the parties to exclude any related matters (further buttressed by the 1996 Agreement in

fact containing provisions regarding the sale of 38 Serrano and Lopez de Hoyos). With this clear indication, the parol evidence rule bars entrance of any extrinsic evidence. However, the determination of the "intent" of the parties in excluding a matter is a determination to be made by the jury based on all of the available evidence. See, Poller v. C.B.S., 368 U.S. at 473, 82 S.Ct. at 491 ("**[S]ummary procedures should be used sparingly ... where motive and intent play leading role**") (Emphasis added). It may very well be that the intent of the parties was as urged by Defendants; however, the Court is barred from entering into the area of "intent" and hence, the request is **DENIED**.

Further, Defendants' argument falls short of convincing the Court that such a contract, if indeed one existed, would necessarily need to be a part of the 1996 Agreement. Accordingly, without passing judgment on whether such a contract actually existed, the parol evidence rule does not bar proof of its existence, and thus Defendants' argument here is also **DENIED** on this argument. See Bemis v. U.S., 30 F.3d 220, 222-223 (1ᵗ Cir. 1994) ("[r]eferring to the parol evidence rule, the Blackledge Court explicitly noted that a written contractual provision disclaiming the existence of additional promises, while deserving of 'great weight,' does not 'conclusively bar subsequent proof that such additional agreements exist and should be given force'." quoting Blakledge v. Allison, 431 U.S. 63, at 75 n. 6, 97 S.Ct. 1621, at 1630 n. 6 (1977)).

### 7.    When plaintiffs entered into the 1996 Loan Agreement they waived all claims of dolo in their previous transactions with the Puerto Rico banks..

According to the Defendants, the Plaintiffs, upon entering into the 1996 Agreement, "confirmed" the original loan agreements regarding Lopez de Hoyos and Serrano 38. The practical effect of this, under Civil Code Article 1252 (31 P.R.Laws Ann. § 3511), is that "[c]onfirmation

purges the contract of all defects which it may have contained from the moment of its execution."

31 P.R.Laws Ann. § 3524. Defendants assert that when Plaintiffs entered into the 1996 Agreement

they were fully aware of any / all deceit, fraud and *dolo* claims resulting from Lopez de Hoyos and

Serrano 38. Thus, their execution of the 1996 Agreement waived any deceit, fraud and *dolo* claims,

because of their "confirmation" of the earlier agreements (from which the deceit, fraud and *dolo*

claims would have been based). Plaintiffs claim: (A) they were not aware of Defendants' deceitful

actions until after execution of the 1996 Agreement; and (B) Defendants deceit in getting them to

enter into the 1996 Agreement would have annulled any confirmation of earlier contracts.

Once again, without entering into an opinion one way or the other, properly assessing this

argument involves weighing of facts which the Court is prohibited from doing at this stage. Issues

of motive and intent are, of course, strictly left to the jury. Poller, *supra;* Pullman, *supra; see also*

Mulero Rodriguez v. Ponte, Inc., 98 F.3d at 677, (reversing summary judgment and stating,

"determinations of motive and intent,..., are questions better suited for the jury".) See also,

Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.Supp. at 936 (at summary judgment level,

there is "no room for credibility determinations, no room for the measured weighing of conflicting

evidence..."). Further as to this argument, these are "material" facts which are controverted.

Defendants claim that Plaintiffs knew the facts constituting *dolo* at the time the latter contract was

entered; Plaintiffs claim that they did not know at the time of entering the contract (1996 Agreement)

the facts constituting *dolo*. Hence, Defendants' argument is **DENIED**, because there are material

facts in controversy. Kennedy v. Josephthal Co. Inc., 814 F.2d 798, 804 (1st Cir. 1987).[11]

---

[11]The Court also notes that the ultimate decision is one of "knowledge" by a party derived
from circumstantial evidence, which is to be determined by the jury unless there is "smoking
gun" evidence as to knowledge. Tew v. Chase Manhattan Bank, N.A., 728 F.Supp. at 1555.

26

8.    **The Puerto Rico banks cannot be held responsible for the economic viability or the permits of López de Hoyos 143 and Serrano 38. Thus, the underlying and misdirected assumptions of plaintiffs' claims have no foundation in fact or law.**

Defendants first contend that they cannot be held responsible for claims arising from contracts to which they were not parties.  With respect to Lopez de Hoyos, that property was purchased by Co-Plaintiff SVESSA from Puentenueva, S.A. Financing was pre-obtained (the "1992 Agreement") by Co-Plaintiff Standard Quimica from Sociedad Hispano Inmobiliaria de Gestión, S.A. (a non-party in this action), an affiliate owned by non-party Banco Central Hispanoamericano, S.A. (the Spanish parent bank of the Puerto Rico banks). After the execution of the 1992 Agreement several terms of the contract were renegotiated between Standard Quimica and Sociedad Hispano Inmobiliaria de Gestión (the "Addenda").  With respect to 38 Serrano, that property was sold to Co-Plaintiff Prieto by the building's owner, non-party Banco Central Hispanoamericano, S.A.  The Defendants to this case- the Puerto Rico Banks- were not parties to either of these contracts.

Plaintiffs bring up two points in countering this line of Defendants' arguments.  First, even though the 1992 Agreement was negotiated in 1992, and resulting monies were disbursed in 1993, they claim the contract was not officially executed until 1995. Second, they assert that Mr. Antonio Campos, an officer and director of the Puerto Rico banks, was the gentleman with whom all negotiations in 1992 and 1993 took place.  Accordingly, Mr. Campos makes the current Co-Defendants parties to both the Lopez de Hoyos and 38 Serrano sale agreements.

The Court reviewed the intricate maze of contracts and dates anew, and considers Plaintiffs' arguments unavailing.  The 1992 Agreement- **the sale / purchase of Lopez de Hoyos-**  was negotiated in 1992, executed in early 1993, and renegotiated in early 1993.  As pointed out early in the introduction to this Order above, on February 10, 1993, Standard Quimica and Inverplata

27

executed a commitment letter for the Puerto Rico banks to provide a $20 million loan above: $4 million to refinance the debt with the Dominican banks, $14 million for investment in "an apart-hotel at Lopez de Hoyos 143, Madrid, Spain," and $2 million to finish hotel and casino construction at Quinto Centenario (hereafter the "1993 Agreement", loan agreement). This apparently even though they already had original financing for Lopez de Hoyos 143 from Sociedad Hispano Inmobiliaria de Gestión, S.A. (through the 1992 Agreement). For reasons not clear from the record at this time, though all disbursements of the $20 million were made in 1993, the loan agreement was actually signed in July of 1995. **Thus it was the 1993 Agreement, *not* the 1992 Agreement, which was actually executed in 1995, and which involved the Puerto Rico banks as parties.** Though the number of Prieto's companies involved, and the numbers of loans secured to pay other loans is extremely confusing and somewhat convoluted, the Court however expects the Plaintiffs to have proper knowledge under the maze of contracts involved. Plaintiffs' second point regarding Mr. Campos also must fail, as Mr. Campos was Director of the International Division of non-party Banco Central Hispanoamericano, S.A., until June of 1993 (before moving to be CEO of Banco Central Hispano Puerto Rico and Chair of the Board of Central Hispano International). Accordingly, during the times for negotiation of the sale / purchase contracts for the two properties, Mr. Campos worked for the non-party Spanish bank.

Accordingly, as Defendants were not parties to the *sale / purchase contracts* of Lopez de Hoyos and 38 Serrano, nor of the 1992 Agreement, Defendants cannot be held liable for claims arising *out of these specific contracts*. 31 P.R. Laws Ann. § 3374 ("[c]ontracts shall only be valid between the parties who execute them...."). **This ruling has no affect, however, on any potential liability by any of the parties to this case concerning Lopez de Hoyos and 38 Serrano which**

**may arise from any other contracts / agreements to which the parties at bar entered.**

Defendants do, however, attempt to score another point through the back door, in continuing their argument through saying that the permits and regulatory conditions of these properties were covered by the sale / purchase agreements, and as such are not their responsibilities. Defendants are correct in as much as they only regard the **sale / purchase agreements**; liability can still lie, however, should any of these responsibilities have been deemed to have been included in any of the agreements that they respectively entered into.

Defendants' argument here is **GRANTED in part** and **DENIED in part**, in accordance with to the opinion stated herein.

9.  **The Puerto Rico Banks owed no fiduciary duties to plaintiffs. The First Claim in the Amended Complaint must be dismissed.**

Defendants contend that as a general rule, no fiduciary duties exist in the lender-borrower relationship. *See* Reid v. Key Bank, 821 F.2d 9, 17 (1st Cir. 1987). "A lender, moreover, owes to its borrower or guarantor no duty to use reasonable care to determine that a project is sufficiently feasible to permit repayment of the loan." In re Fordham, 130 B.R. 632, 646 (D.Mass. 1991). "To impose such requirements would significantly alter the relationship between banks and those with whom they deal. In effect, it would impose liability upon banks for business failures arising through ventures they financed." *Id.* at 646-647. Actual placement of trust and confidence, however, can quickly alter the general rule. Factors that have been used to hold that no fiduciary relationship exists are the availability of sources of financial support other than the lender, sophistication and experience as a businessman, lack of evidence of "diminished emotional or physical capacity or of the 'letting down of all guards and bars'", and counting with the assistance of legal counsel. Reid,

29

supra; see also: In re Belmont Realty Corp., 11 F.3d 1092, 1101 (1ˢᵗ Cir. 1993). By the very nature of deference to a list of factors to be weighed in determining the existence of a fiduciary relationship, the Court would need to rely upon self-weighing of evidence. As stated numerous times above, this is not the place for such Court action. Issues of motive and intent are, of course, strictly left to the jury. Poller, *supra*; Pullman, *supra; see also* Mulero Rodriguez v. Ponte, Inc., 98 F.3d at 677, (reversing summary judgment and stating, "determinations of motive and intent,..., are questions better suited for the jury".) See also, Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.Supp. at 936 (at summary judgment level, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence..."); Defendants' argument # 9 is **DENIED**.

**10.    Plaintiffs' Eighth Claim of civil conspiracy is without merit.**

Plaintiffs ask this Court to interpret a claim for civil conspiracy, a claim that is based on principles of common law, into the Commonwealth of Puerto Rico's civil law codes. Defendants claim there is no basis for the tort of civil conspiracy; Plaintiffs state Article 1802 of the Civil Code, 31 P.R.Laws Ann. § 5141. Article 1802 is Puerto Rico's general tort law. Notwithstanding that it has a statute of limitations of one year, thus almost certainly making any claim for civil conspiracy time barred, Article 1802 does provide redress for individuals injured through malice or negligence from any one of numerous identified torts. Plaintiffs conclude: "Clearly, if two or more persons are acting in accord and doing unlawful acts to cause damages to another, then they must redress those damages as provided by Article 1802 of the Civil Code."

Granted, should timely brought claims for injuries be brought against any number of individual tortfeasors, the law provides redress. This, however, is hardly argument enough to convince the Court it should introduce extrinsic principles of cannon of common law into the Puerto

Rico civil law system. See Garcia v. Tribunal Superior, 99 P.R.Dec. 293 (1970). Defendants'

argument on point is **GRANTED**, and any / all claims related to civil conspiracy are dismissed.

11.     **The Fifth Claim for breach of the 1996 Loan Agreement and the Ninth Claim for
        accounting must be dismissed for plaintiffs have failed to meet their burden to prove
        defendants' violation of a material provision in that agreement and plaintiffs have no
        standing to assert a breach of contract claim or demand an accounting since they
        breached the essential payment obligations in the agreement.**

Defendants claim that Plaintiffs fail to state any specific contractual provision from the 1996

Agreement which Defendants specifically breached, instead relying entirely on impermissible parol

evidence to impose non-existent obligations. Additionally, as Plaintiffs never made any payments

toward the 1996 Agreement loan as originally contracted, their breach of that agreement denies them

subsequent standing to claim breach of the same agreement by Defendants. Plaintiffs counter that

the specific allegations of breach were contained in the Second Amended Complaint, paragraphs 109

to 116, and 125. Additionally, Plaintiffs claim they tried to comply with the terms of the 1996

Agreement, however it was Defendants' failure to obtain the necessary permits that forced Plaintiffs

into noncompliance.

Through Argument 5 above, the Court already ruled that the parol evidence rule negated any

extrinsic evidence, given that the 1996 Agreement was clear and left no doubt as to the intentions

of the parties. The paragraphs Plaintiffs referred to in the Second Amended Complaint sheds no new

light on the matter, instead arguing yet again the existence of verbal contracts and promises that

clearly contradict the express terms of the 1996 Agreement. Plaintiffs specifically refer to Article

8.5 of the 1996 Agreement in their 2nd Amended Complaint, which reads:

> Article 8 ["Representation"] .5: Borrower and Guarantors possess all patents,
> permits, licenses, grants, and whatever other authorizations may be necessary to carry

31

out their business in the same manner as it is being carried out at present, or as they propose to carry out in the future, without diminution of the rights of third parties, except for the licenses in connection with Lopez de Hoyos and 38 Serrano, which are being processed.

However, in reading this paragraph in conjunction with other paragraphs on point, it becomes clear

that the responsibilities were those of the Plaintiffs, along with these other responsibilities for the

Plaintiffs:

> Article 9.2: Maintain, renew and keep current all rights, powers, privileges, licenses, permits and grants which borrower and guarantors presently possess, which are necessary for the proper exploitation of their businesses.

> Article 9.3: Comply with all laws or regulations of the Dominican Republic, Venezuela and Spain, as the case may be, applicable to the exploitation of their businesses.

> Article 9.4: Maintain at all times all licenses or permits required by law applicable to the exploitation of their businesses.

> Article 9.12: Borrower, Prieto and Standard Venezuela shall actively pursue the obtention [sic] of the necessary licenses for the exploitation and sale of the hotel-apartments in Lopez de Hoyos and the sale to third parties of said hotel-apartments.

Defendants argument #11 is **GRANTED** insomuch as any claims for breach of the 1996

Agreement are dismissed for failure to state a claim upon which relief can be granted.


12.    **This Court must dismiss the Sixth Claim for Breach of Implied Duty of Good Faith because none of the alleged duties arises from the 1996 Loan Agreement or from any other contractual obligations of the parties.**

Defendants claim that Plaintiffs have no evidence of a provision from the 1996 Agreement

from which they could base an implied duty of good faith, nor could they establish that Defendants

acted unethically, nor could they prove that Defendants knew and concealed any material facts that

reasonably should have been revealed.  Plaintiffs counter that good faith permeates all commercial

and economic transactions, citing Prods. Tommy Muñiz v. COPAN, 113 P.R. Dec. 517 (1982). This

issue is one laden with issues of motive and intent, as well as a need for judicial weighing of evidence at summary judgment stages, and is thus **DENIED**. Mulero Rodriguez v. Ponte, Inc., 98 F.3d at 677 (1st Cir. 1996) (reversing summary judgment and stating, "determinations of motive and intent,..., are questions better suited for the jury".) See also, Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.Supp. at 936 (at summary judgment level, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence...").

13.   **This Court must dismiss the Seventh Claim of an alleged improper assignment of the loan credits for the Puerto Rico Banks had the right to assign the credits to a third party without the debtors' consent and no contractual provision prohibited the banks from doing so or required the debtors' consent.**

Defendants argue, and the Court agrees, that there is no provision in any agreement between the Plaintiffs and the Puerto Rico banks restricting or limiting the right of the Puerto Rico banks to assign any or all of the credits with the plaintiffs to any third party.  Further, the loans credits were valid and enforceable at the time of the assignment.  Plaintiffs do not contend  that they satisfied their payment obligations with the Puerto Rico banks before or after the assignment.  In these circumstances, because Puerto Rico law which governs the 1996 Agreement does not require the creditor to obtain the debtor's consent prior to an assignment of loan credits, IBEC Housing Intl. v. Banco  Commercial de Mayaguez, 117 P.R. Dec. 371 (1986) (Art. 1152 Civil Code), Defendants' request of *brevis* disposition as to this issue is **GRANTED**.

14.   **Plaintiffs' claim for lost profits should be dismissed.**

Plaintiffs seek the restitution of the amounts they paid, including interest, commissions and expenses, for the purchase and construction of Lopez de Hoyos, and restitution of the amounts paid for the purchase of the Serrano 38 building.  In addition, they seek the lost profits they might have

33

realized from the sale of the individual apartments they constructed on the López de Hoyos, as senior citizens'homes, and the leasing of the Serrano 38 building for offices and/or commercial purposes.

The crux of Defendants' argument is that Plaintiffs are not legally entitled to restitution and lost profits at the same time. It would be a duplicative remedy and would constitute an unjust enrichment.[12] Had Plaintiffs been entitled to elect between the remedy of restitution and the remedy of lost profits, they waived their right to elect lost profits and, at most would be entitled to restitution. They waived their right of election because they failed to pay the mortgage loans on the properties and lost such properties upon foreclosure of the mortgages. They are not entitled to lost profits because it was impossible to sell López de Hoyos as senior citizens'homes.  It was also impossible to lease Serrano 38 for office or commercial purposes. Therefore, no profit would have been realized.

Plaintiffs respond with their argument of enticement and fraud by Defendants regarding the possible uses of the properties, hence whether or not they could actually have been used for the fraudulently stated uses, they relied on Defendants' statements and calculated profits as a result. First, the Court is not convinced that the Defendants could be responsible for such fraudulent statements (assuming only for purposes of this argument that they had been said, and they were fraudulent), given that the Defendants were not the property owners and did not sell the properties to the Plaintiffs.  On this point, however, the Court would be required to weigh issues of fact in its ultimate determination, which of course is not permitted. Greenburg v. Puerto Rico Maritime Shipping Auth., 835 F.Supp. at 936 (at summary judgment level, there is "no room for credibility

_____

[12]Defendants' arguments stand for the proposition that plaintiff is then not entitled to restitution of his investment and also the profit such investment would have produced.

determinations, no room for the measured weighing of conflicting evidence...").

The Court is more concerned, however, with Defendants' position that as Plaintiffs did not pay their mortgage, they have waived their right to request lost profits. Surely any reasonable person would understand that if they did not pay a mortgage, they would lose the property. At the end of the day, it appears that through this particular claim Plaintiffs had these two properties purchased with the Defendants' monies, after accepting the money (through the properties), Plaintiffs then cry foul, and never made a payment on the mortgage (referring now to the 1996 Agreement), and lost the properties due to foreclosure on the mortgage notes. Plaintiffs now seek lost profits on properties they never paid for, resulting from a contract they claim they were fraudulently induced to sign.[13]

Moreover, and perhaps most determinative, the Court notes that Plaintiffs did not render any substantive Opposition to the mortgage argument. Indeed, the Court understands that Plaintiffs did not even defended the present claim for lost profits. It was not channeled into a clearly articulated claim and not raised squarely, but was merely alleged in perfunctory fashion. As such it can be waived, for "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." U.S. v. M.A. Zannino, 895 F.2d 1, 17 (1st Cir. 1990); *quoting* Brown v. Trustees of Boston Univ., 891 F.2d 337, 353 (1st Cir. 1989); Leer v. Murphy, 844 F.2d 628, 734 (1st Cir. 1988); see also, Carroll v. Xerox Corporation, 294 F.3d 231, 243 (1st Cir. 2002). See, Wojick v. Mass. State Lottery Commission, 300 F.3d 92, 105 (1st Cir. 2002) (Court of Appeals affirmed summary judgment stating Plaintiff did not establish a claim of selective prosecution, for Plaintiff's "...vague allusions...failing to back them up with sufficient argument" ... *quoting* U.S. v.

---

[13]Under Puerto Rico law, specifically under *dolo* capable of annulling a contract, Plaintiffs are limited to the remedy of restitution, as stated in 31 P.R. Laws Ann. § 3514, see also fn. 9, *supra*.

Zannino, *supra,* "we do not consider arguments that are undeveloped on appeal."); see also, S.P.

Singh v. Blue Cross/Blue Shield, 308 F.3d 25, 45 (1ˢᵗ Cir. 2002) (plaintiff's contractual claims was

waived because "he treats it so perfunctorily that we deemed it waived"; *qouting* U.S. v. Zannino,

895 F.2d at 17). "It is not enough merely to mention a possible argument in the most skeletal way,

leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its

bones...Judges are not expected to be mindreaders. Consequently, a litigant has an obligation 'to

spell out its arguments squarely and distinctly', or else forever hold its peace'." U.S. v. Zannino, 895

F.2d at 17; *quoting* Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1ˢᵗ Cir. 1988) (*quoting* Paterson-

Leitch Co. v. Massachussetts Municipal Whilesale Elec. Co., 840 F.2d 985, 990 (1ˢᵗ Cir. 1988)).

Therefore, Plaintiffs' claim for lost profits is waived.

Hence, Defendants' position as to the claim of lost profits is **GRANTED**.

### 15.    The Court must dismiss the Tenth Claim of negligent infliction of emotional distress and moral damages of Prieto and his spouse.

Co-Plaintiffs Prieto and Espuny, as well as their conjugal partnership, have been integrally

involved in all of the facts of this case since the very inception of the case. Co-plaintiffs are also

parties to some of the contracts at issue. Any issues as to availability of damages for emotional

distress are purely factual in nature, and thus are the province of the jury. In case a breach or

violation of contract be found, parties are then provided the remedy of damages, including emotional

distress. See Constructora Bauza, Inc. v. Garcia Lopez, 129 P.R. Dec. 579 (1991); Pereira v.

I.B.E.C., 95 P.R. Dec. 28 (1967). Defendants' position as to this issue is **DENIED**.

36

## CONCLUSION

The Court cannot grant Defendants' Summary Judgment as reqeusted, because as a federal judge (as opposed to civil, local judges, who do not have to maneuver through the jury institution), the Court is barred from weighing any evidence nor entering into deciding issues involving motive and/or intent. Further, the Court, at the present stage of proceedings, must analyze the summary judgment, taking the facts in light most favorable to Plaintiffs, which preclude the issuance of summary judgment. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. at 150-151, 120 S.Ct. at 2110-2111.

This case is fraught with issues of motive and intent. The Court shall mention but a few: a) Plaintiffs' allege that Defendants "developed a scheme to take over the Hotel Quinto Centenario", ¶ 23 of the Second Amended Complaint; b) Plaintiffs allege that the intent of the Puerto Rico Agreement, was twofold, and that it had the real purpose to induce Plaintiffs to pay over more sums of money, to place in pledge significant assets with Defendants, ultimately placing Defendants in a position to obtain those assets of the Plaintiffs by foreclosure, ¶ 97-98 of the Second Amended Complaint; c) that the original loan agreements were entered into through fraud, deceit and misrepresentations, ¶ 150-157 of the Second Amended Complaint; d) the 1996 Puerto Rico Agreement was the direct result of duress and undue influence, ¶ 158-167 of the Second Amended Complaint. The summary judgment request also contains numerous issues requiring the Court to perform the weighing of evidence.

The Court is precluded as a federal court sitting with a jury at summary judgment level, to weigh the evidence, make credibility determinations, and to pass upon material issues that involve motive and intent. That notwithstanding, the Court must emphasize it is somewhat troubled with

some of the Plaintiffs' factual theories. Those theories sound at times incredible, unimaginable, and difficult to understand or believe, even for a reasonable jury. Therefore, Plaintiffs at summary judgment are forewarned the standard at Fed.R.Civ.P. 50 is somewhat different from that of summary judgment, although it is said to "mirror" that of summary judgment. <u>Anderson v. Liberty Lobby,</u> 477 U.S. at 250-251, 106 S.Ct. 2505. The Court may, at Rule 50 stage, after Plaintiffs' witnesses have been subject to the rigor of cross-examination, evaluate whether the evidence, together with all reasonable inferences in favor of [a possible] verdict [in favor of Plaintiffs], could lead a reasonable person to only one conclusion, namely, that the moving party was entitled to judgment. Rule 50 (a)(1) provides, in pertinent part: "If during a trial by jury a party has been fully heard on a issue and there is no legally sufficient evidentiary basis for a **reasonable jury** to find for that party on that issue, the court may determine the issue against that party and may grant that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue." (Emphasis added). That is to say, the standard under a motion for judgment as a matter of law (direct verdict), <u>Golden Rule Insurance Company v. Atallah,</u> 45 F.3d 515, 516 (1st Cir.1995) quoting from <u>Sanchez v. Puerto Rico Oil,</u> 37 F.3d 712, 716 (1st Cir.1994); is that the court views "the evidence in the light most favorable to the nonmovant and decide[s] whether any **reasonable jury** could have returned the verdict it did". (Emphasis added). Simply stated, it is whether the evidence is such that, without weighing the credibility of the witness or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that **reasonable man** could have reached [on the standard of a 'reasonable jury']." <u>Van Blargan et al. v. Williams Hospitality Corporation,</u> 759 F.Supp. 940 (D. Puerto Rico 1991) citing <u>Martinez Mall v. Levitt & Sons of Puerto Rico,</u> 583 F.2d 565, 568 (1st Cir.1978) (Emphasis added).

Consequently, Plaintiffs' theories and assertions can eventually be subject to evaluation and analysis by this Court, taking into consideration the reasonable jury standard, although there is, of course, no guarantee that the Court will intervene, since the matter depends on the evidence eventually presented at trial.

Wherefore, Defendants' Motion for Summary Judgment (Docket No. 255) is **DENIED in part and GRANTED in part.** Jury selection and trial shall commence on January 21, 2003, at 9:00 a.m.

**IT IS SO ORDERED.**

DATED: January ____, 2003.

**DANIEL R. DOMINGUEZ**
**U.S. District Judge**